Our next case is 21-1169 Rocky Mountain Wild v. U.S. Forest Service. Mr. Stills, you may proceed. Good morning, your honors. May it please the court. My name is Travis Stills, of Energy and Conservation Law, on behalf of Rocky Mountain Wild. The appellant and the organization that submitted the Freedom of Information Act requested issue. Because the agency bears the burden on de novo review, I intend to reserve about five minutes for rebuttal. The background on this is a FOIA request filed in July 2018. The request sought records created, particularly while the Forest Service and Level McCombs Joint Venture negotiated a proposal that would allow unrestricted development at the base of the Wolf Creek Ski Area within the Rio Grande National Forest. That request is in the appellate record at 320. The road access proposal was sought because, on the merits, Judge Kane and the late Judge May should invalidated previous agency approvals in the underlying analysis. Both cases on the merits involved contractor bias and the private developer's undue influence. Rocky Mountain Wild uses FOIA to access records to provide informed and substantive comments on Forest Service management and proposals and activities. The Forest Service's most recent approval is briefed on the merits in front of Judge Urtweil. And Rocky Mountain Wild's access to these agency records depends on the judicial oversight that Congress built into FOIA. So I plan to address three things this morning. First, the Rule 56A and FOIA's de novo review standards. Second, the reasonable search standard. And third, the FOIA exemptions. First, Congress placed the burden on the agencies by stating in very plain language that, quote, the burden is on the agency to sustain its action during de novo, I'm sorry, in quote, during, quote, de novo review. And that's provided in the addendum at 77. And the agency must meet that burden with admissible evidence that satisfies Rule 56A summary judgment standard. No, it's a very familiar standard, of course. No genuine dispute as to any material fact. And the movement is entitled to judgment as a matter of law. The FOIA standard and Rule 56A says nothing about bad faith. There's no threshold there building in bad faith. If I could jump in. They have a duty to undertake a reasonable search of the records. And what about the search here was unreasonable? And maybe a larger question is, what records do you think were missed or not revealed? Thank you, Honor. Yes, and the reasonable standard, as we've laid out in the briefing, is what we do believe controls here. Everyone has to submit under 56H their affidavits and get faith. That doesn't really add much to the inquiry. But as far as the search, you know, the standard is, as you said, reasonable. Reasonable efforts is what the statutory language says. And the documents that, well, first, showing that documents haven't been found is not really our burden. But we can demonstrate that because the methods were such and exclusions were made, that I think it is reasonable to expect or it is reasonable to conclude that there would be additional documents found. For example, the search terms arguments. The methods used limited the search terms quite dramatically. What should they have done? What they should have done for the search terms, for example, LMJV, only three of the 27 people that conducted a search searched for LMJV, the common acronym used for LMJV, who was the entity involved here. What they should have done with search terms in order to have a reasonable search across, well, they excluded Washington, D.C. and the regional offices who were almost certainly involved. But a reasonable set of search terms should have went out from the FOIA officer that had something of a global reach, something you would expect everyone to run through their software. As we'd said, there should be some sophistication in there, at least basic Boolean terms, some ands, some ors, some quotes. You know, look for LMJV, look for Level McCombs Joint Venture, look for Harry Adams, look for the different folks who were involved. So there's a global search that the FOIA officer would look at. And then hand that down to all persons likely to possess records or people who are in charge of record-keeping systems, big servers, centralized servers for that. And those people with additional knowledge and information about the specific ways they may have kept notes can add search terms to what the FOIA officer gave. But that's not what we have here. Just one clarifying question. Is there like a general category of documents that you believe were not produced? Yes. And what is that category of documents? Paper records. Only a handful of agency personnel search for paper records. There is also a category of records around LMJV's demand for access that was received by Ms. Gustafson. That e-mail is in the record, Appendix 320, where the private entity made a really strong demand that we get our access or else. Very strong language. Yet, Ms. Gustafson, who was in charge of a considerable amount of the work that went on on this proposal and was having direct contact with LMJV, their attorneys and agents, actually while the case was pending in the Tenth Circuit in 2018 and 17, there was no search conducted by Ms. Gustafson. She had since retired, resigned, I believe retired. But there's no search of her records past 2015 until 2018. So we have a whole group of records that are linked to the district court cases that dismissed previous Forest Service approvals because of undue influence, agency contractor bias. There's also a considerable number of records outside of the 27 individuals that were not searched based on what is referred to as a routed through theory. If somebody was on all the e-mails, we would expect all of these documents to have been circulated through. So that assumption, an inference I guess, in a Rule 56A standard is not proper. The inference that some people received messages that weren't routed through these 27 people is what should be controlling. Documents that came in from LMJV or their agents, who came in from a state agency who was communicating with a biologist and the biologist didn't pass it along to that group of 27. Archaeological folks, folks who deal with land adjustment specialties. The record is clear that the 27 people are not the only people likely to possess records. There's a universe of people who are out there that have been excluded by the routed through, and that's especially Washington, D.C. Didn't the declarations that are in the record try to explain that? They tried to explain that based on... Doesn't the FOIA case law give that some kind of presumption of regularity? There is some case law that would give it presumption of regularity, but during this briefing on this litigation, I think it was a Friends of Animals case that was decided on FOIA, and it made very clear based on a body of case law from the circuit that it has to be admissible. It can't just be an affidavit that you say, oh, because it's an affidavit, it's good. There needs to be some probing into that affidavit on whether it's admissible, whether it's hearsay, whether it's describing something that just because it's in the document should not be a presumption that it's true. Presume that it's filed in good faith. 56H requires that. But the affidavit should be probed, and good faith may be shown to rebut it, but of course it's a two-step process within Rule 56A. They have to make the prima facie case. It requires some probing and analysis of what they provided as good and admissible. And then it switches over to the ability of the FOIA requester to present countervailing evidence. But that's not what happened below. And as this court takes on de novo review, basically putting yourself in the positions of the district court, I think if you apply the standard cleanly and correctly and without the confusion that the good faith has sort of brought into some of these case law analysis, I think you can see through the search that was conducted here and see that it wasn't reasonable. And you have an objection to the Vaughn Index. Is that correct? That's correct. Could you clarify for me what the problem with the Vaughn Index is? The problem with the Vaughn Index is it's extremely general. It's a lot of pages but lacking some very clear requirements, including linking each of the withholdings to a harm that would be recognized as Congress intended in 2016. But one of the glaring problems with it is over half of the entries lack critical information, such as the author or recipient of the documents that are being held as privileged. So let me ask you something about that. Say we're back at the district court, or that you're at the district court, and you have a dispute as to half of the Vaughn Index entries, and there are a lot of them in this one. What do you think you have to do? Can you just say, Your Honor, half of these have glaringly bad descriptions, they're way too general, and so it's an insufficient index? Or do you have to take on each insufficient index with your own specific objection? The very familiar two-part or two-step analysis under Rule 56 says both. We get a first shot at whether or not they met their burden. Only if they met their burden, which, by omitting the author and recipients in 4,000 entries, is a pretty good argument that they haven't met their burden. And then it shifts to the FOIA requester to bring countervailing evidence to show problems with it. Right. So we have a chance at both, because the agency – I'm sorry. Yeah, so I guess my concern is that at the district court, you say, Your Honor, there are 4,000 deficient entries in this Vaughn Index. You have to do something about it. I mean, what's the district court supposed to do unless – I mean, courts operate based on litigant-specific objections, and a big global objection would dump all of that into the district court's lap to go through it and make an independent judgment as to every Vaughn Index entry because you didn't point out which ones were wrong. In the district court record, we provided sites and documents that showed where all those entries were. We didn't just count and say take our word for it. And, in fact, the burden being on the government, as set out in the case law, is very important here because they need to do that in the first instance. And if they do that, and this court is strong in making that very clear, the district court looks at it and says, Wow, 4,100 entries didn't include the author and the recipient of supposedly privileged materials. We're done. Agency, you go back and do your job. Then we can come and look at all the spots. But I think what I'm laying out actually makes a much more efficient way for a district court to resolve a case specifically as this one. I believe I'm out of time. Thank you, Counsel. We appreciate your arguments. Let's hear from the Forest Service. Ms. Miller. May it please the Court. Marissa Miller on behalf of the United States Forest Service and the Department of Agriculture. The touchstone of FOIA is reasonableness. Under the plain text of the statute, an agency discharges its obligations as long as it makes, quote, reasonable efforts, unquote, to search for responsive records. The affidavits submitted by the Forest Service in this case establish that the agency met and exceeded that standard. Before you get too far, let's sort of bounce back to the last thing I was talking to your opposing counsel about, and that is this idea that he says that a big number of the entries of your bond index were missing critical information, blatantly obvious from a cursory review of it, and that in his mind the way to handle that under the law is to say, Your Honor, look, we've looked at these 8,000 entries on the bond index. Half of them don't have the recipient and author of the document. That's glaringly bad. You need to send it back to the Forest Service to make them do their job. What do you think about that as far as that being the way for the district court to handle it? Well, Your Honor, I think that that kind of general objection is obviously very difficult for a district court to handle, and I do think the district court here probably approached it in the fairest way, which was by doing a random spot check of the 4,000 entries that plaintiff wanted to challenge. I think the district court did reject those, and I would agree with that, but certainly plaintiff would have been in a much stronger position if instead of simply providing those citations to the court, it had provided the district court with some analysis of why those entries were flawed, because the case law does tell us that failing to include an author in some cases, failing to include a recipient is not necessarily something that makes an index entry incomplete. And so I think that puts the district court in a very difficult position, and I think that the district court here handled it as best it could. Okay. I do want to say that the Forest Service devoted an extraordinary amount of time, money, and resources to completing this task, ultimately producing more than 140,000 pages of responsive records and an 800-page bond index. Despite all this, Rocky Mountain Wild continues to argue that the agency's search efforts were inadequate, but because of the detailed affidavits that were submitted by the Forest Service, the burden is on the plaintiff to cast not just doubt, but substantial doubt on the adequacy of the agency's search. And the case law makes clear that that burden requires a plaintiff to present evidence of overlooked materials. Yet the plaintiff has still failed to identify or describe a single document or class of documents that it believes that the agency's search has missed. So can't their evidence of overlooked materials be based on a missing search term? I can't remember what acronym your opposing counsel used, but it had to do with this specific deal, the developer. And, I mean, wouldn't you assume that if nobody searched for the developer's name or the acronym of the developer's name, that that could indicate, that that could be considered evidence of missing documents or, you know, maybe an intent to evade the question? Sure, and I think that the answer to that would be the presumption of good faith, which is essentially that we have a situation here where 27 different employees conducted a series of very different searches, some of whom didn't even use search terms. So, yes, the fact that some of them didn't use LMJV might raise a question about why they didn't do it. I think that given the nature of the search, it's unsurprising and not per se unreasonable that many of them probably weren't familiar with this acronym and chose not to. And under the presumption of good faith, I think that the legal work that that presumption does is when an agency employee makes a judgment call, which they did here, right? That was how the search was structured. Everyone is the expert on their own files. They're making a judgment call. We don't automatically assume that the judgment call that they made was an egregious oversight. We don't assume that the failure to use LMJV was an attempt to evade FOIA's requirements. We presume that agencies act in good faith, and then the burden shifts to the plaintiff to provide some evidence. And, you know, certainly I think this situation is distinguishable in some sense from some of the cases cited by plaintiff where you really, you don't need any kind of evidence. You can see from the face of the search that it's flawed. In Tushnet, in New Orleans workers, what the district court does is essentially takes the FOIA request and puts it side by side with the search terms and says, there is no way these search terms are going to capture this category of document. But that's simply not an argument that was made here. Rather, the entire substance of plaintiff's argument is essentially that because some people use this acronym, it's possible that other people might have thought about searching for it and should have thought about searching for it, and maybe some documents fell through the cracks there. Do you know if the search terms that were used in this case captured this acronym that was specifically brought up by your opposing counsel? Not that the acronym was used as a search term, but the search term captured documents containing the developer's name or the acronym. I mean, because that would suggest sufficiency of the search terms if it did. Yes. I mean, I would argue that the burden to present that kind of evidence was on the plaintiff. I'm not suggesting, I'm just as a practical matter, I'm just curious. I assure you that there were hundreds if not thousands of documents that included the names of the developer and this acronym because it is, you know, the project is titled Wolf Creek Access Project. You know, even searching something that generic is going to, as we see here, produce 150,000 pages of responsive records. And I think that what plaintiff's argument would have been more convincing if given the hundreds of thousands of pages they possess and their expertise on this entire project, they had provided some sort of evidence that perhaps there were communications between agency officials where the only term that would have caught these responsive records was LMJV. But despite just the enormous number of pages that were all searchable, thanks to the Forest Service, that were at their disposal, plaintiff's arguments remained speculation. You know, the records were produced on a rolling basis. Was there, wasn't there interaction between the service and Rocky about the ongoing search? Was there any request for additional searches or did they proffer search terms that they think you should have used? Was there any kind of interactive or dialogue? My understanding, based on the record, is that Rocky Mountain Wild didn't bring these complaints to the Forest Service's attention until after I think the production had been complete, although I'm not absolutely certain. But there was not really any suggestion to my knowledge of additional search terms, required search terms. They didn't see the search terms until the declarations were produced in the litigation, correct? I'm not sure I know the answer to that, and I'm not sure the record speaks to it, so I apologize for that. But certainly we do see in other case law situations where the plaintiff is in ongoing communication with the agency and the agency is willing to accommodate those demands. And I do think there is probably a strong suggestion in the record, based on the demands that Rocky Mountain Wild did make throughout this process about searchable documents, about the Vaughn Index including BCCs, that the two were in communication and that Rocky Mountain Wild really didn't choose to, I'm reluctant to use the phrase, but Monday morning quarterback this search until it had gotten to the motion for summary judgment point. And there's, Mr. Stills took the position that a Boolean search should have taken place versus a non-Boolean search that did take place. Would a different type of search have generated more hits here, or maybe let me phrase it a little differently. Was it unreasonable not to engage in a Boolean search in a FOIA request like this? I mean, I would certainly argue that it's not unreasonable. There's nothing in FOIA that really sets out any requirements for what the agency does. And I think the D.C. Circuit has said this is an area where we really don't want to micromanage the executive branch because a lot of these decisions require specialized expertise. Certainly, if we were writing a treatise on FOIA best practices, we might encourage certain practices to litigation proof an agency's search, but I don't think that the failure to use Boolean search terms here, especially in light of the fact that really the only evidence on the record of the adequacy of the agency's search is 150,000 pages and no identification of missing documents, it would be very difficult to say that that technical option, if it wasn't used by agency employees, rendered the search unreasonable. So let me ask you a question about the district court's order clawing back some documents for the Forest Service. So, I mean, obviously in the litigation discovery context, if there's an inadvertent production, I mean, it's well established that you can claw documents back in some instances. I've not seen, I don't think, a case in the FOIA context that specifically addresses clawing back privileged documents and things like that. What's your best authority for the idea that the district court has the authority in the FOIA context to claw these back once the Forest Service has produced them? Sure. I will start by answering your question, but I do have some follow-up comments on it. My best authority is that it falls under the inherent equitable powers of the court, right? Unlike the rules of discovery, FOIA doesn't provide any of these mechanisms, but courts still have the power to manage these searches. You know, the text doesn't authorize a district court to choose whether it wants to do rolling productions of how many pages. The district court is essentially in charge of this process, and both parties submit to the court's jurisdiction. And so the court gets the power to order a clawback from the same place. It gets its power to manage its docket, to manage discovery. It's just its inherent equitable powers. The quick follow-up to that is I do not understand the plaintiff to be making that argument. They did not raise that particular argument below. Their argument concerns the fact that once these documents were in the public domain, they believe that the agency lost the authority to claw them back. There are several district court cases, and I believe they are cited in our brief in a footnote, in which district courts have held that they do have this clawback power under their inherent equitable authority. Even after dissemination to the public? I do not believe they have specifically addressed that point. Okay. Yeah, because that's sort of another question. I mean, obviously in the litigation discovery context, I can see if you produce documents to me in response to a request for production, and you inadvertently include some privileged material, and I run out and publish it on my website, that does not defeat my privilege if I have an otherwise valid claim to claw back these documents. I just wonder in the FOIA context if there might be a different answer, because the whole idea of FOIA is sort of it's a daylight document. It's let's be transparent with government documents and let the public see them if they give us a proper request, and presumably, I mean, the Forest Service looks at the documents before they roll them out, and I just wonder if we're looking at different interests in FOIA than we are in regular discovery. I mean, I would argue that the same principles apply, especially here. You know, we're talking about Exemption 5, which is attorney-client privilege. It's the same exact analysis, and I do believe that the idea that inadvertent disclosure of documents by an agency waives any exemptions would certainly be problematic, right? These exemptions, many of them exist for a reason. There's a reason that agencies aren't supposed to release these documents, because I don't want my personal cell phone number being released to the public. I don't want law enforcement data being released to the public, and certainly, FOIA wants us to shine daylight onto what the government is doing, but there are some areas in which the government, you know, we know that the government has a right and an obligation to keep that information private, and I don't think that the inadvertent disclosure would really alter that analysis. Fair enough. That's interesting. I welcome any additional questions from the court, but if there's nothing further, we would respectfully ask the court to affirm. Thank you, counsel. We appreciate it. We appreciate both arguments this morning. The counsel shall be excused, and the case will be submitted. Thank you.